(No. 22265.—

The People of the State of Illinois, Defendant in Error, *vs.* Paul Mangano, Plaintiff in Error.

*Opinion filed April 21, 1934.*

HELEN M. CIRESE, and EDWARD S. KING, (EVERETT JENNINGS, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, with one Henry Spranza, was indicted in the criminal court of Cook county of the crime of robbery with a gun. A jury was waived and evidence heard before the court. It does not appear that Spranza was tried with plaintiff in error. The latter was convicted and brings the cause here for review, arguing two assignments of error: One that the court erred in limiting the cross-examination of witnesses for the People, and the other that plaintiff in error was not proved guilty beyond a reasonable doubt.

The testimony of Ray J. Clark, the complaining witness, is in effect as follows: That on September 24, 1932, he was a milk-wagon driver for the Bowman Dairy Company, and that about 11:00 o'clock on the morning of that day, while he was in an alley between Berteau and Cullom avenues, in the city of Chicago, delivering milk, he was held up by two young men with guns. One of them was in front of him and the other behind him. They took from him $17 of his own money and $30 belonging to the dairy company. He identified plaintiff in error as the man in front of him. His identification was positive. He testified that plaintiff in error was dressed in a dark-blue suit, and that he did not notice any birth-marks or scars on his face. Clark testified he did not see plaintiff in error for some months after the robbery and first identified him from a photograph at the bureau of identification on February 5, 1933. He was asked on cross-examination if the party

who came to take him to the bureau of identification told him whom he was to identify. Objection was raised to this question and sustained. Notwithstanding this ruling the witness stated that one who came for him did not say anything to him with reference to whom he was to identify when he went to the bureau of identification. It was not until after that time that he saw plaintiff in error.

The defense was an alibi. Plaintiff in error testified that on the morning of the 24th of September, 1932, he was attending football practice at grounds occupied by an athletic club of which he was a member. These grounds are located at Central avenue and Congress street, which is about a mile from the point where Clark was robbed. He stated that he did not leave the football grounds during that morning. He denied any participation in the crime.

Two witnesses who during September, 1932, were attending high school with plaintiff in error, testified that plaintiff in error was a member of the football squad, and while neither specifically remembered Saturday morning, September 24, each stated that plaintiff in error was there most every Saturday morning, and that from a certain record book which they kept, and which was introduced in evidence, they were able to testify that he was there on the morning of the robbery. This book was a record of the Senson Athletic Club, and the testimony of these two witnesses showed that it was a record of the attendance of the members of the club at the meetings of the club on Friday evenings; that it also carried entries of those present at football practice each Saturday morning, and that the record in the book showed that plaintiff in error attended practice on Saturday, September 24, which was the day of the alleged crime.

Plaintiff in error's mother testified that while she had no special reason to remember September 24, she knew that her son was in the habit of going to football practice during that time; that so far as she knew he did not miss

any Saturday; that a light-blue suit was the darkest suit he had, and that he had a birth-mark on his forehead and a scar on his chin, which latter mark he received in football some years before.

In rebuttal the People called one Clyde Saxton, who testified that he was a milk-wagon driver for the Wieland Dairy Company, and that on the morning of September 24, at about 10:50 o'clock, while delivering milk, he was held up and robbed in an alley between Cuyler avenue and Belle Plaine avenue, which place is one block north and one-half block east of the place where Clark was robbed. This witness testified that he saw plaintiff in error in that neighborhood at that time, and that plaintiff in error and another young man held him up with guns and robbed him.

Concerning the first assignment of error, counsel for plaintiff in error say it was error to limit the cross-examination of the complaining witness as to conversation between him and the person who went to the bureau of identification with him. As we have seen, notwithstanding the objection of the People was sustained the witness stated that the person with him did not say anything to him with reference to whom he was to identify. Counsel thus had the benefit, if such it be, of the answer they sought. This witness was also asked to say whether, if shown the picture that he saw at the detective bureau, he could identify it as a picture of the plaintiff in error. Objection to this question was sustained. No picture was produced, and the court suggested to counsel that if they wished to question the witness on that point they should first produce the picture. This was not error. Of like character were other questions to which the court sustained objections. Counsel argued to the trial court, and here, that the purpose of these questions was to test the memory of the witness. He was advised by the judge that such was not the proper means of testing the witness' memory. These are the only questions objected to. No error occurred in the rulings of the court in this regard.

It is next urged that defendant was not proved guilty beyond a reasonable doubt, and in support of this contention it is argued that the alibi introduced by the defense was sufficient to raise reasonable doubt as to whether plaintiff in error was present, or could have been present, at the scene of the robbery at the time it was shown to have occurred, and that the rebuttal evidence did not remove such reasonable doubt. As we have stated, the identification by Clark of plaintiff in error was positive. He stated that he had a good look at the accused; that the robbery was something that had never happened to him before and was something unusual, and that he, therefore, could not forget who did it. The testimony as to the record of the Senson Club offered to show the presence of plaintiff in error at the football grounds on the morning of the robbery tended to show that the practice had been to mark the members of the squad present if they were there the major portion of the time. Neither of the two alibi witnesses nor the mother of plaintiff in error had any independent recollection of the morning of September 24. On the other hand, as we have seen, plaintiff in error was identified by the witness Saxton as having been within a block and a half of the scene of this robbery ten minutes previous to the time it was committed.

The truthfulness of the witnesses and the weight of their testimony lay primarily with the trial court. This court has often stated that it will not substitute its own opinion for that of a jury or the trial court unless satisfied that there is reasonable doubt as to the guilt of the accused. (*People* v. *Yates,* 339 Ill. 421; *People* v. *Martin,* 304 id. 494; *People* v. *Deluce,* 237 id. 541.) We would not be justified in setting aside the finding and judgment in this case, and as no error occurred on the trial requiring reversal, the judgment is affirmed.   *Judgment affirmed.*